739 P.2d 310

**STATE of Idaho,**
**Plaintiff-Respondent/Cross-Appellant,**

v.

**John R. CHAPMAN,**
**Defendant-Appellant/Cross-Respondent.**

No. 16393.

Supreme Court of Idaho.

April 23, 1987.

Rehearing Denied June 8, 1987.

Gar Hackney, Lynn, Scott & Hackney, Boise, for defendant-appellant/cross-respondent.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., David R. Minert (argued), Depu-

ty Atty. Gen., Boise, for plaintiff-respondent/cross-appellant.

SHEPARD, Chief Justice.`

This is an appeal from a conviction of kidnapping in the second degree, and a cross-appeal by the State from the sentence imposed. The only issue on the principal appeal is whether the strictures of I.C. § 18–301 prevent the appellant Chapman from being "punished" for kidnapping since he was already convicted and punished for criminal contempt of court. We affirm both the principal appeal and the cross-appeal.

This case was on appeal in *State v. Chapman*, 108 Idaho 841, 702 P.2d 879 (Ct.App.1985). As therein indicated, the then wife of Chapman initiated divorce proceedings in early 1982, and obtained an order awarding her custody of the parties' minor child, Athena. Chapman obtained possession of the child and fled with her to England where they remained for 13 months.

Upon Chapman's arrest and return to Idaho, he was tried upon charges of kidnapping in the second degree and grand theft by extortion. Over the objection of the State, the trial court, upon Chapman's motion, dismissed the kidnapping charge holding that it could not be sustained since the child's mother had only been awarded temporary custody.

The State appealed from the dismissal of the charge of kidnapping, and the Court of Appeals reversed the dismissal of the kidnapping charge and ordered the reinstatement of that information against Chapman.

Inexplicably, while the State's appeal was pending, the State proceeded to trial on the remaining charge of grand theft by extortion. As noted by the trial court, the foundation for that charge was flimsy at best. During the course of that trial, the defendant insisted upon an instruction to the jury that a lesser included offense of grand theft by extortion was the misdemeanor offense of criminal contempt of court. The State objected strenuously to such jury instruction, but the instruction was nevertheless given. Not surprisingly,

the jury returned a verdict of not guilty of grand theft by extortion, but found the defendant guilty of the included offense of criminal contempt of court. On that charge Chapman was sentenced to, and did serve, six months in the county jail.

Upon remand from the Court of Appeals, the information on the charge of kidnapping in the second degree was reinstated, trial was held thereon, a verdict of guilty returned by the jury, and judgment of conviction was entered. The trial court noted the outrageousness of Chapman's actions and sentenced him to an indeterminate sentence not to exceed ten years. However, the court suspended the entire ten-year sentence and placed Chapman on probation subject to a number of strict conditions including six months to be served in the Ada County Jail with credit thereon being received for the six months served by Chapman on the criminal contempt conviction.

From that above-noted procedural imbroglio Chapman appeals, asserting that the provisions of I.C. § 18–301 prohibit his punishment and conviction for the crime of kidnapping since Chapman's acts which resulted in the kidnapping conviction are the same as those for which he was convicted and sentenced under the charge of criminal contempt of court.

I.C. § 18–301 provides:

An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other.

[1, 2] Constitutional constraints on double jeopardy relate to retrial or reconviction for the same criminal charge, while I.C. § 18–301 constrains punishment on charges of different crimes based on the same acts of the defendant. Thus, it is clear that I.C. § 18–301 exceeds the scope of constitutional constraints on double jeopardy. In Idaho, when the single action of a defendant

creates liability under two criminal statutes, a defendant may only be punished under one of those statutes. *See State v. Brusseau*, 96 Idaho 558, 532 P.2d 563 (1975).

■ However, it is clear that when two crimes arise from the same sequence of events, such is not sufficient to invoke the protection of I.C. § 18–301. *See Daugherty v. State*, 102 Idaho 782, 640 P.2d 1183 (Ct.App.1982); *State v. McCormick*, 100 Idaho 111, 594 P.2d 149 (1979). *See also State v. Werneth*, 101 Idaho 241, 611 P.2d 1026 (1980), *cert. denied*, 449 U.S. 1129, 101 S.Ct. 951, 67 L.Ed.2d 118 (1981); *State v. Horn*, 101 Idaho 192, 610 P.2d 551 (1980).

■ We reiterate that Chapman was charged with kidnapping and grand theft by extortion, I.C. §§ 18–2403 and 18–2407. Kidnapping, as defined by I.C. § 18–4501(2), includes the leading, taking, enticing away, or detaining a child under the age of 16 years with intent to keep or conceal it from the person having lawful care or control thereof. Extortion, on the other hand, is defined as obtaining property by compelling or inducing the delivery of property by means of instilling a fear that if the property is not so delivered the extortioner will do acts calculated to cause damage or harm. We deem it clear that the necessary elements of each of those crimes are not necessary elements of the other, do not necessarily constitute included offenses of each other, nor are the acts necessary to support one of the charges necessarily acts which will support the other charge. In the instant case, the act of kidnapping occurred by the taking of the child on May 7, 1982, and transporting her out of the state and out of the United States with the clear demonstrated intent to keep and conceal it from the person having lawful care and control thereof. As noted by the trial judge, and demonstrated in the record, the alleged grand theft by extortion did not occur until June 14 when Chapman began making telephone calls to the mother of the child. Clearly, although the acts of the defendant constituted a sequence of events, the acts upon which one charge was based were not the same acts upon which the other charge was based.

The State did not charge Chapman with criminal contempt of court, but rather it was the defendant who injected the charge of criminal contempt of court into the proceedings by way of insistence upon a jury instruction of included offense. As stated by the trial court, "Ironically, ... it is my opinion that had you not asked for the included offense instruction, the jury would have acquitted your client outright." As also noted by the trial court, the count of grand theft by extortion was charged to have occurred on June 14 and thereafter and therefore, the lesser included offense, as sought by the defendant Chapman, was based on acts committed on June 14 and thereafter. Clearly, those acts were separate and distinct from the acts of May 7 which constituted the kidnapping. Hence, the strictures of I.C. § 18–301 are not applicable to the instant case. We affirm the conviction on the charge of second degree kidnapping, and also affirm the order of the trial court during the sentencing process which gave Chapman credit for the six months previously served in the Ada County Jail.

■ The State, on cross-appeal, asserts that the trial court abused its discretion in its imposition of a suspended indeterminate ten-year sentence for the crime of second degree kidnapping. A sentence within the statutory maximum will not be disturbed on appeal absent a demonstrated abuse of discretion. *State v. Cotton*, 100 Idaho 573, 602 P.2d 71 (1979). There is no abuse of discretion, and a sentence is reasonable if it appears to meet the goals of protecting society and the achievement of deterrence, rehabilitation, or retribution. *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App. 1982). In the instant case the trial judge carefully stated his consideration of the sentencing objectives and his rationale for imposing the particular sentence. The mother of the victim did not seek incarceration, but did seek restitution of the substantial monetary loss she had sustained. One of the terms of the strict probation imposed by the trial court was that Chap-

man should make restitution. Chapman was living in another state, had remarried, and had obtained employment. Chapman appeared to pose no threat to society at large, and could hardly be expected to provide restitution or support for the child if incarcerated, as sought by the State.

We find no abuse of discretion in the sentence imposed by the trial court, but rather view it as an exercise in practicality and eminently correct. The conviction on the charge of kidnapping in the second degree is affirmed, and the sentence imposed thereof is also affirmed.

DONALDSON and BAKES, JJ., concur.

DONALDSON, Justice, specially concurring.

I write to address the concerns raised by Justice Huntley in his dissent. He cites several cases (primarily from Louisiana and Illinois) which stand for the proposition that convictions for both criminal contempt and the underlying crime which led to the contempt charge violate double jeopardy. The Illinois and Louisiana courts apply the "same evidence test" when addressing double jeopardy concerns. *Louisiana v. Hope*, 449 So.2d 633 (La.App. 1st Cir.1984); *People v. Gray*, 36 Ill.App.3d 720, 344 N.E.2d 683 (1976). The "same evidence test is broader than the double jeopardy requirements of the U.S. constitution as contained in the fifth amendment. *Hope, supra* at 636. Idaho has adopted the "indictment or pleading theory" when ruling on double jeopardy challenges. *State v. Sivak*, 112 Idaho 197, 731 P.2d 192 (1986). *State v. Thompson*, 101 Idaho 430, 614 P.2d 970 (1980). While in this case, the "indictment or pleading theory" clearly does not preclude prosecution and conviction for both criminal contempt and kidnapping, this is not the issue before the Court.

The issue that needs to be focused upon is whether the acts which resulted in Chapman's kidnapping conviction are identical to the acts which let to his criminal contempt conviction. In *State v. McCormick*, 100 Idaho 111, 594 P.2d 149 (1979), the Court examined the California and Arizona counterparts to § 18–301. The Court noted that the California courts had interpreted their statute as "being dependent upon the intent and objective of the defendant, *i.e.,* if all offenses are incident to one objective, the defendant may be punished for any one of them, but not for more than one." *Id.* at 115, 594 P.2d 149. However, the Arizona courts had interpreted their counterpart to I.C. § 18–301 and held that a defendant could be convicted of two crimes despite an identity of criminal objectives. The *McCormick* court adopted the Arizona rule. Thus, in *McCormick*, the defendant's conviction for rape and burglary were upheld because the act of burglarizing was different from the act of raping.

The Court of Appeals in *State v. Sensenig*, 110 Idaho 83, 714 P.2d 52 (Ct.App.1985) correctly cited the rule from *McCormick*, but then distinguished acts by defining the elements of the individual crimes. Thus, the defendant's conviction in *Sensenig* for the crimes of conspiracy to commit robbery, aiding and abetting a robbery, and aiding and abetting burglary was held not violative of I.C. § 18–301 because the differing elements for the three crimes.

Relying on *McCormick* and *Sensenig*, Chapman could be convicted of both kidnapping and criminal contempt because both require proof of separate elements. Proof of criminal intent (I.C. § 18–1080(4)), requires:

"(1) willful;

"(2) disobedience;

"(3) of a court order."

Kidnapping in the second degree (I.C. § 18–4501(2)) requires:

"(1) willful;

"(2) detention;

"(3) of a child under the age of 16;

"(4) without lawful authority;

"(5) with the intent to conceal the child from its custodial parent."

Since proof of the crimes require proof of different elements, in a broad sense, I.C. § 18–301 is not violated and Chapman could be convicted of both crimes. *See also, State v. Greensweig*, 103 Idaho 50, 644 P.2d 372 (Ct.App.1982).

Even assuming that the two crimes involve the same act, there are overriding concerns involved that require the kidnapping conviction to be sustained. When heinous crimes are involved, a defendant should not be able to rely on a misdemeanor contempt conviction to circumvent the punishment for the more serious crime. This is especially true in a case such as this one, where the defendant asked for the instruction on the criminal contempt.

I first suggested a policy exception to I.C. § 18–301 in *State v. Brusseau*, 96 Idaho 558, 532 P.2d 563 (1975). (J. Donaldson, concurring in part and dissenting in part.) In *Brusseau*, the defendant plead guilty to attempted murder and assault with a deadly weapon. Subsequently, the victim of the assault died, and Brusseau was convicted of voluntary manslaughter. On appeal, Brusseau argued that I.C. § 18–301 prevented punishment for both voluntary manslaughter and attempted murder. The majority held that the subsequent death was a new act, and therefore, Brusseau could be prosecuted for both crimes but could not be punished for both crimes.

I pointed out that the statute speaks to acts of the accused, not acts of the victim. However I continued:

> "Rather than distort the statute to reach a somewhat skewed interpretation, I believe it preferable to acknowledge an assault/murder exception to the 'same act' test. Special policy considerations are involved in factual situations like that now before us. Clearly the accused is entitled to a speedy trial and society is entitled to exact a penalty should conviction result. As noted in *Randolph*, the state cannot be expected to wait a year and a day to determine whether an assault victim will survive his injuries."

Similar policy considerations exist here. A judicial order should be afforded the utmost respect and a violation thereof should be punished regardless if the violation results in a separate crime. This is particularly true in orders concerning child custody disputes between parents. They should be enforced quickly and expediently without the use of the more complex procedures surrounding a felony charge. They should not be violated lightly and with impunity. Thus, a criminal contempt exception should be carved out of I.C. § 18–301, and Chapman's kidnapping conviction should be sustained. Any other result is an assault on common sense and on the criminal justice system.

HUNTLEY, Justice, dissenting.

There are times when judges and justices, seeking to preserve law and order and project an image of support for law and order, themselves inadvertently misinterpret the law.

This case, unfortunately, may be an example of such a situation.

Idaho Code § 18–301 reads:

> **18–301.** An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution *for the same act or omission under any other.*

This Court in *State v. Horn*, 101 Idaho 192, 197, 610 P.2d 551, 556 (1980), interpreted I.C. § 18–301 in the following fashion:

> Idaho's multiple punishment statute, I.C. § 18–301, exceeds the scope of the constitutional constraints on double jeopardy. Under I.C. § 18–301 a defendant cannot be punished *twice for the same act, rather than the same crime.* If defendant's single action creates liability under two criminal statutes, defendant can only be punished under one statute. *See State v. Brusseau*, 96 Idaho 558, 532 P.2d 563 (1975).

Thus, both our statutes and our case law focus on whether the same act or omission is the foundation of each crime.

In the instant case the "sameness" can be diagrammed as follows:

Acts Leading to Conviction

| Kidnapping | Criminal Contempt |
|---|---|
| 1. Intent | 1. Intent |
| 2. Detention and Failure to Return Child by Monday | 2. Failure to Return Child by Monday |

There was only one act here (however egregious), i.e. the withholding of one child from one mother by one miscreant father.

The majority opinion totally misstates and confuses the appropriate focus of our inquiry by comparing the acts constituting *kidnapping* with those constituting *grand theft by extortion* when the correct focus and the only issue on appeal is comparing the acts constituting *kidnapping* with those constituting *criminal contempt*. That basic error is contained in the part of the majority opinion footnoted below, which is the key to the majority attempt to justify its result.[1]

Logic and the ample case authority requires reversal of this case.

Chapman was charged with kidnapping under I.C. § 18–4501(2).[2] Chapman was also charged with criminal contempt of court under I.C. § 18–1801(4).[3]

It is evident that the acts of Chapman which violated the temporary custody order are the identical acts which lead to Chapman's conviction on the kidnapping offense. In *Louisiana v. Hope*, 449 So.2d 633 (La. App. 1st Cir.1984), the court dealt with a situation where the defendant was convicted of criminal contempt for violating a child visitation order by removing the child from the state for five months. The court held that double jeopardy provisions precluded subsequent prosecution for simple kidnapping, as the offenses were the same under the "same evidence" test:

> The contempt charge only required proof that defendant wilfully disobeyed a lawful order of the court. The simple kidnapping charge required proof that defendant took the child out of the state, from the custody and without consent of the legal custodian, with the intent to defeat the jurisdiction of the court. However, the proof necessary to convict defendant of the simple kidnapping charge would have been sufficient to convict defendant of the contempt charge. We therefore conclude that the two offenses are the same under the "same evidence" test and that the trial of defendant on the simple kidnapping charge would have the effect of placing defendant twice in jeopardy for the same course of conduct. *Id* at 636.

Courts in other jurisdictions have concurred in the ruling of *Hope* that a defendant punished for criminal contempt cannot be punished for a substantive criminal of-

---

1. We reiterate that Chapman was charged with kidnapping and grand theft by extortion, I.C. §§ 18–2403 and 18–2407. Kidnapping, as defined by I.C. § 18–4501(2), includes the leading, taking, enticing way, or detaining a child under the age of 16 years with intent to keep or conceal it from the person having lawful care or control thereof. Extortion, on the other hand, is defined as obtaining property by compelling or inducing the delivery of property by means of instilling a fear that if the property is not so delivered then extortioner will do acts calculated to cause damage or harm. We deem it clear that the necessary elements of each of those crimes are not necessary elements of the other, do not necessarily constitute included offenses of each other, nor are the acts necessary to support one of the charges necessarily acts which will support the other charge. In the instant case, the act of kidnapping occurred by the taking of the child on May 7, 1982, and transporting her out of the state and out of the United States with the clear demonstrated intent to keep and conceal it from the person having lawful care and control thereof. As noted by the trial judge, and demonstrated in the record, the alleged grand theft extortion did not occur until June 14 when Chapman began making telephone calls to the mother of the child. Clearly, although the acts of the defendant constituted a sequence of events, the acts upon which one charge was based were not the same acts upon which the other charge was based.

2. Kidnapping in the second degree is defined by I.C. § 18–4501(2) as follows:
   **18–4501. Kidnapping defined.**—Every person who wilfully:
   ....
   2. Leads, takes, entices away or detains a child under the age of sixteen (16) years, with intent to keep or conceal it from its custodial parent, guardian or other person having lawful care or control thereof, or with intent to steal any article upon the person of the child; or

3. Criminal contempt of court is defined by I.C. § 18–1801(4) as follows:
   **18–1801. Criminal contempts.**—Every person guilty of any contempt of court, of either of the following kinds, is guilty of a misdemeanor:
   ....
   4. Wilful disobedience of any process or order lawfully issued by any court.

fense arising out of the same act. In *U.S. v. U.S. Gypsum Co., et al.*, 404 F.Supp. 619 (D.D.C.1975), the court held that double jeopardy barred a contempt petition for price fixing because of a previous indictment for the same conduct. The court stated as follows:

> Since the contempt proceeding contains only one element, i.e. wilful intent, which was not present in the criminal proceeding, (the) two offenses are the same for criminal jeopardy purposes within the meaning of the Blockburger test.... The addition of the element of a willful violation of a court decree ... is not ... sufficiently material or substantial to supersede the considerations of fairness and finality which form the basis of the double jeopardy bar ... to go forward with a second prosecution against Respondents for substantially the same price-fixing scheme for which they have already been convicted would contravene the constitutional protection against double jeopardy ... *Id.* at 622–623, 625.

In *Gypsum*, the court rejected an approach to double jeopardy which concentrated on a technical comparison of the elements of the two statutes rather than on the overwhelming similarity in the proof.

In *People v. Gray*, 36 Ill.App.3d 720, 344 N.E.2d 683 (1976), the defendant was punished for indirect criminal contempt for assaulting his wife in violation of a protective order entered in a divorce action. The court held that a subsequent prosecution for aggravated battery was violative of the fifth amendment prohibition against double jeopardy, notwithstanding technical differences as to intent and disparity in punishment available for the two offenses. The court reasoned that:

> While it is true that the contempt proceedings could not have resulted in the judgment that defendant was guilty of aggravated battery, the fact remains that he was twice punished for the same offense under the Blockburger test, because the elements of proof were substantially identical in both prosecutions. We do not believe that a mere disparity in punishments available for the two offenses restricts the application of the

double jeopardy bar." *Id.*, 344 N.E.2d at 687.

In holding that the fifth amendment prohibition against double jeopardy is violated when conduct previously punished as an indirect criminal contempt is again sought to be punished as a substantive criminal offense, the *Gray* court distinguished federal cases which permitted dual sanctions by noting the following:

> ... [T]he federal cases which have permitted dual punishment by summary contempt and criminal prosecution of the same acts are clearly distinguishable from the instant indirect contempt proceeding where defendant was forced to "marshal the resources and energies necessary for his defense more than once for the same alleged criminal acts. [Citations omitted].

In 1977, the Illinois Supreme Court upheld the Illinois Appellate Court's decision in *People v. Gray*, 69 Ill.2d 44, 12 Ill.Dec. 886, 370 N.E.2d 797 (1977). The court stated that, "here an application of the same evidence test makes manifest that defendant was prosecuted and punished twice for the same offense.... Since the offenses of criminal contempt and aggravated battery were the same, a trial for the offense in both the divorce and criminal court violates the guarantees against double jeopardy." *Id.*, 12 Ill.Dec. at 47, 370 N.E.2d at 800.

In *People v. Holmes*, 54 Ill.App.3d 843, 11 Ill.Dec. 498, 368 N.E.2d 1106 (1977), the fact pattern was similar to that of *Gray*. However, in *Holmes* there was no final determination of the contempt charge, but the court held that jeopardy attached when the trial court in the contempt proceeding began to hear evidence. Therefore, double jeopardy prohibited the defendant's criminal prosecution for armed violence based upon the same facts and acts which were previously the subject of the contempt hearing.

In *People v. Lucas*, 146 Ill.App.3d 5, 99 Ill.Dec. 832, 496 N.E.2d 525 (3rd. Dist. 1986), the court again dealt with a fact situation where a husband was charged

with contempt for violation of a protective order in a dissolution proceeding that required both the husband and wife to refrain from striking or otherwise interfering with personal liberty of the other party. Therefore, the subsequent aggravated assault and battery charge was viewed by the court as successive prosecution and barred by prohibition against double jeopardy. The same act which would have convicted the defendant of assault and battery was the identical act which would have lead to a contempt conviction.

The acts which resulted in Chapman's kidnapping conviction are identical to the acts which led to his criminal contempt conviction. The two offenses are not divisible into separate events and this case cannot be distinguished from Idaho case law interpreting I.C. § 18–301. In *State v. Gallatin*, 106 Idaho 564, 682 P.2d 105 (Ct. App.1984), the Court of Appeals ruled that the defendant could not be tried and convicted of both conspiracy to deliver cocaine and aiding and abetting delivery of cocaine. The Court of Appeals reasoned that everything Gallatin did to aid and abet the delivery of cocaine was also done in furtherance of the conspiracy. The court noted that "he did nothing more as a principal by aiding and abetting the delivery of the cocaine than he did in the furtherance of conspiracy." *Id.* at 569, 682 P.2d 105.

The majority opinion in the instant case not only fails to apply, distinguish, or overrule Idaho's leading case of *State v. Horn, supra*, quoted at the opening of this opinion, but cites it as standing for the exact opposite position than that for which it stands, the majority stating: ·

> However, it is clear that when two crimes arise from the same sequence of events, such is not sufficient to invoke the protection of I.C. § 18–301. *See Daugherty v. States*, 102 Idaho 782, 640 P.2d 1183 (Ct.App.1982); *State v. McCormick*, 100 Idaho 111, 594 P.2d 149 (1979). *See also State v. Werneth*, 101 Idaho 241, 611 P.2d 1026 (1980), *cert. denied*, 449 U.S. 1129 [101 S.Ct. 951, 67 L.Ed.2d 118] (1981); *State v. Horn*, 101 Idaho 192, 610 P.2d 551 (1980).

*State v. Werneth* above cited does not even deal with I.C. § 18–301, the opinion reading:

> I.C. § 18–301 is, however, not applicable to the present case because Werneth was never acquitted of the I.C. § 18–2407 charge.

I have an additional problem with the mixing of concepts contrary to the logic of the statute displayed in the concurring opinion of Justice Donaldson wherein he states:

> Relying on *McCormick* and *Sensenig*, Chapman could be convicted of both kidnapping and criminal contempt because both require proof of separate elements. Proof of criminal intent (I.C. § 18–1080(4)), requires:
> (1) willful;
> (2) disobedience;
> (3) of a court order.
> Kidnapping in the second degree (I.C. § 18–4501(2)) requires:
> (1) willful;
> (2) detention;
> (3) of a child under the age of 16;
> (4) without lawful authority;
> (5) with the intent to conceal the child from its custodial parent.

The statute does not speak to "elements"— it speaks to the same "acts." Elements (2) and (3) of criminal contempt as he lists them, i.e., (2) disobedience and (3) of a court order, are not physical acts but are the consequences of the acts listed as elements (2), (4), and (5) in Justice Donaldson's analysis of kidnapping. In other words, he has not distinguished different acts but has set forth different elements which are something quite apart from acts.

Stated another way, disobedience is not an act, but taking the child is the act. The act of taking a child to England may or may not be disobedience, depending upon whether it violates a restraining order or is an authorized vacation trip. Disobedience of an order is not the act, it is the label we place upon the consequence of the act.

That Chapman has been tried twice for the same acts is made abundantly clear by the record of the proceedings. At the sen-

tencing hearing of March 5, 1986, on the kidnapping charge, Judge Schwartzman stated:

"This court has received a very lengthy pre-sentence investigation, incorporat-[ing] many collateral resources, references, as far as this case is concerned. Needless to say, as far as the underlying facts are concerned, this court is as familiar with this case as it's been familiar with any case, since it was basically tried twice, since the evidence in both cases was practically the same."

At the October 23rd pre-trial arguments, the court had at least two interesting comments:

"Criminal contempt is merely the willful disobedience to any process or order issued by the court."

and:

"The point is this: The criminal contempt does not spin off of a kidnapping charge. The criminal contempt is a spinoff of Count II of the information, grand theft by extortion. As a matter of fact, the criminal contempt really had nothing to do with the offense of grand theft by extortion. It is not a necessarily included offense in any traditional sense. It was not alleged as the manner or means of committing the offense."

That the same acts are involved in both the kidnapping and the criminal contempt, and that dates of occurrences or time cannot be an artificial excuse for separating them, is further evidenced by the Information. The Information in Count I charged kidnapping "on or between the 7th and 10th day of May, 1982, through the 16th day of June 1983." Count II, relative to the extortion was subsumed in that same time period, the dates charged being June 14th, 1982 through June 16th, 1983.

I respectfully submit that the majority opinion, without providing rational conclusions on the true issues presented, legislates § 18–301 out of existence in most cases.

BISTLINE, Justice, concurring in the opinion of HUNTLEY, Justice.

The rationale of the majority opinion, as I attempt to understand it, is predicated on the ability to say that under *Brusseau*, where a *single* action of defendant subjects him to prosecution under two criminal statutes, that such differs from *a course or sequence of events* which also subjects him to prosecution under two criminal statutes. In other words, the majority simply plays upon the language of § 18–301 where the words "act" and "omission" are in the singular.

Conveniently or inadvertently—which of the two making little difference—the majority opinion, in setting out § 18–301, fails to provide the statute's first seven words which are: "18–301. Acts punishable in different ways—Double jeopardy." Clearly, the statute applies to a combination of acts as well as a single act. The statute is concerned with conduct—be it *an* act or a sequence of acts, an omission or omissions, or combinations of the two—which has been criminalized. The purpose of the statute is to preclude a court from imposing more than one punishment where the conduct in question has been criminalized by more than one statute.

Moreover, the cases cited by the majority for the novel rationale advanced today do not in the least sustain that rationale. The *Werneth* case did not at all involve § 18–301; the *Horn, Daugherty,* and *McCormick* cases did not distinguish between a course of conduct and a single solitary act. The majority clearly renders no service to the trial bench and bar by muddying up what have been clear and proper applications of § 18–301. In the *Horn* opinion, a footnote established the basis under which § 18–301 precludes the entry of multiple judgments of conviction, as well as multiple sentences. In that case, the opinion had first noted that "the judge sentenced Horn to ten years for robbery and imposed no sentence for the kidnapping conviction." The footnote made the observation:

The State questions how appellant is prejudiced by a conviction of kidnapping with no punishment. The additional felony on appellant's record is sufficient prejudice to permit appellant to bring this argument. *See* I.C. § 19–2514 (Idaho's Habitual Criminal Statute). *Horn,*

*supra,* 101 Idaho at 196 n. 1, 610 P.2d at 555 n. 1.

Those who read today's four opinions emanating from this Court might note that in the *Horn* case the observation was made that "I.C. § 18–301" has been a problem to the Court, as evidenced by the three separate opinions in *State v. Brusseau ...,* *Horn, supra,* 101 Idaho at 198, 610 P.2d at 557, Bistline, J., concurring but dissenting from the majority holding that Horn's conduct in detaining a cab driver long enough to rob his pockets could sustain both a kidnapping and a robbery conviction.

The majority's true concern in the instant case seems to be found in the fact that while the appeal from the kidnapping dismissal was pending, the state went to trial on the remaining charge of theft by extortion, and obtained a conviction on the lesser included offense of criminal contempt—described by the majority as being "inexplicable" state action. In *Horn,* 101 Idaho at 192 [610 P.2d at 551], a separate concurring opinion by Bistline, J., pointed out that on occasion "there is no reason to, and every reason not to, move so swiftly as did the prosecutors in *Randolph* and *Brusseau.*"

Justice Donaldson, in his separate *Brusseau* opinion, opined that: "Clearly the accused is entitled to a speedy trial ... and the state cannot be expected to wait a year and a day to determine whether an assault victim will survive his injuries." While it is true that the Idaho courts do and will respect the constitutional and statutory right to a speedy trial, it is equally true and well-founded that there is no constitutional right to be *charged,* and all that the more alert prosecutor need do is keep one eye on the statute of limitations and the other on the potential defendant.

In this case, too, what was done has been done. The state, even though it objected to the trial court's giving of the included offense instruction, nevertheless did obtain a conviction of criminal contempt. Where that conviction has never been appealed from and any appeal now being time-barred, it is "inexplicable" how today's majority can direct the district court to vacate

the conviction of criminal contempt and sentence thereon, which bizarre relief to the credit of the attorney general was not requested or mentioned.

### CONCLUSION

The result achieved by the majority's skewering around with § 18–301 is an assault on common sense and on the criminal justice system.