768 P.2d 1344

STATE of Idaho, Plaintiff–Respondent,

v.

Gary RANDLES, Defendant–Appellant.

STATE of Idaho, Plaintiff–Respondent,

v.

Sue ERNST, Defendant–Appellant.

Nos. 15561, 15562.

Court of Appeals of Idaho.

Jan. 31, 1989.

Petition for Review Granted July 21, 1989.

Dan J. Rude, Coeur d'Alene, for defendants-appellants.

Jim Jones, Atty. Gen. by Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

## SUBSTITUTE OPINION

The Court's prior opinion, dated August 2, 1988, is hereby withdrawn.

BURNETT, Judge.

These are consolidated appeals from judgments of conviction entered against two defendants for manufacturing a controlled substance (marijuana) and for possessing marijuana with intent to deliver. We are asked to decide four questions: (1) whether the evidence was sufficient to support the verdicts against each defendant individually; (2) whether the separate convictions for manufacturing a controlled substance and for possession with intent to deliver were inconsistent with constitutional and statutory protections against double punishment; (3) whether a jury instruction concerning intent to deliver shifted the burden of proof to the defendants; and (4) whether the trial court erred in admitting testimony regarding the future value of unharvested marijuana plants. For reasons explained below, we affirm the judgments of conviction.

The essential facts may be stated briefly. A Boundary County magistrate issued a warrant authorizing a search for marijuana and drug manufacturing materials at a residence shared by Gary Randles and Sue Ernst (described in the record as "common law" husband and wife). Large amounts of contraband were discovered and seized. In the couple's bedroom, the officers found a paper bag containing seven plastic "baggies." Each "baggie" contained what appeared to be approximately one ounce of marijuana. The officers also seized a finger scale, a box of unfilled "baggies" and a paper bag containing dried marijuana leaves—all of which were located on a bedside table. On the floor beside the bed lay another bag of dried marijuana, as well as two drying trays containing additional marijuana leaves. Four other bags, a glass jar filled with marijuana, some marijuana cigarettes, matches, a lighter and rolling papers were found scattered throughout the bedroom. Two more bags were seized from the kitchen, and marijuana stems were discovered in a sack sitting by a stairway. Marijuana also was discovered in a purse belonging to Ms. Ernst, and marijuana seeds were found in a hutch that contained some of Mr. Randles' papers. Finally, the officers entered an adjoining greenhouse where they seized twenty growing marijuana plants ranging in height from five to ten feet.

Separate informations were filed against Randles and Ernst, charging each of them with manufacture of a controlled substance and with possession with intent to deliver.[1] The defendants filed motions to suppress, which were denied. Following a trial on the merits, each defendant was found guilty of both offenses. The defendants received sentences requiring them to pay fines and to serve indeterminate prison terms, subject to 120–day retained jurisdiction under I.C. § 19–2601(4). These appeals followed.

# I

We first discuss the sufficiency of the evidence. Randles and Ernst argue that the state failed to prove their individual guilt of either offense. This argument appears to rest on two propositions. First, where the state's evidence is circumstantial, a jury may convict only if the evidence excludes any reasonable hypothesis of innocence. *State v. Holder,* 100 Idaho 129, 594 P.2d 639 (1979). Second, convictions against multiple defendants, such as husband and wife, must be supported by evidence showing each defendant's culpability. *E.g., State v. Garza,* 112 Idaho 776, 735 P.2d 1087 (Ct.App.1987); *State v. Vinton,* 110 Idaho 832, 718 P.2d 1270 (Ct.App.1986). Weaving these propositions together, Randles and Ernst contend that the evidence in this case did not foreclose the possibility that one or the other of them was merely a passive bystander, rather than a participant, in the charged offenses.

■ The argument is conceptually flawed. The "reasonable hypothesis" rule is an elaboration of the state's burden of proof at trial; it is not a standard for appellate review of jury verdicts. As we explained in *State v. Fenley,* 103 Idaho 199, 646 P.2d 441 (Ct.App.1982), the "reasonable hypothesis" rule does not empower an appellate court to second-guess the inferences reasonably drawn from circumstantial evidence by a properly instructed jury. Here, the jury was fully instructed on the state's burden of proof, including the "reasonable hypothesis" rule.

The proper standard of appellate review is framed by several familiar principles. A judgment of conviction, entered upon a jury verdict, will not be set aside where there is substantial evidence upon which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560

---

1. Both offenses were charged under I.C. § 37–2732(a). The statute provides in pertinent part that "it is unlawful for any person to *manu-* *facture* or deliver, or *possess with intent to* manufacture or *deliver,* a controlled substance." (Emphasis added.)

(1979); *State v. Decker*, 108 Idaho 683, 701 P.2d 303 (Ct.App.1985). "[W]e are precluded from substituting our judgment for that of the jury as to the credibility of witnesses, the weight of the testimony, and the reasonable inferences to be drawn from the evidence." *State v. Campbell*, 104 Idaho 705, 718–19, 662 P.2d 1149, 1152–53 (Ct. App.1983). Furthermore, we view the evidence in the light most favorable to the state. *State v. Decker, supra.* "A mere possibility of innocence will not invalidate a verdict of guilty on appeal." *State v. Fenley*, 103 Idaho at 204, 646 P.2d at 446.

■ We have reviewed the record in this case. The evidence of possession with intent to deliver was circumstantial but strong. As noted above, the officers found marijuana or marijuana seeds among the personal effects of each defendant. There were extraordinarily large quantities of marijuana located throughout the house— particularly in the defendants' bedroom. In addition, the state presented evidence of the future value of the unharvested plants. Where the quantity and value of a controlled substance are substantial and where, as here, packaging material is coupled with paraphernalia, there is an adequate basis to infer an intent to deliver. *State v. O'Campo*, 103 Idaho 62, 644 P.2d 985 (Ct.App.1982). In sum, the jury reasonably could have inferred that both defendants possessed marijuana with an intent to deliver it.

Likewise, the state presented substantial evidence that Randles and Ernst were manufacturing marijuana by growing and harvesting the plants.[2] The marijuana crop was cultivated in the greenhouse adjoining the defendants' living quarters. The scales, drying trays and plastic bags demonstrated a nexus between activities in the greenhouse and activities in the home. Viewing the evidence in its totality—the immediate proximity of the growing plants to the defendants' living quarters, the readily apparent connection between the plants and the paraphernalia found throughout the home, and the discovery of marijuana in each of the defendants' personal effects—we believe the jury reasonably could have inferred that both individuals were involved in all of the marijuana activities, including the plant-growing operation.

This evidence satisfies a concern we expressed in *State v. Garza, supra*, and *State v. Vinton, supra*. There we said that guilt must be individual. It may not be predicated solely upon a marital relationship or upon a joint property interest in premises where controlled substances are found. Neither will mere awareness of a criminal enterprise on the part of a spouse or joint tenant establish criminal responsibility. Rather, each person must be a participant in the crime. However, the state is not compelled to prove such participation by direct evidence. It may do so with circumstantial evidence sufficient to support a reasonable, nonspeculative inference that each defendant personally has taken part in commission of the alleged offense. Here, we hold that the circumstantial evidence was sufficient.

## II

■ Randles and Ernst next argue that the separate convictions for manufacture of a controlled substance and for possession with intent to deliver are in violation of constitutional and statutory prohibitions against double jeopardy. They contend that both offenses relate to the same course of conduct and, therefore, multiple convictions cannot stand.

We preface our analysis by acknowledging that the offenses are closely related. Indeed, they are parts of a criminal enterprise ranging from cultivation of growing plants to contemplated delivery of

---

**2.** The jury was instructed that "manufacturing" means the "production or propagation of a controlled substance," and that "production" includes the "planting, cultivation, growing or harvesting of a controlled substance."

processed marijuana. However, the Idaho/Uniform Substances Act does not define a single crime of equally broad scope. Rather, as quoted at note 1, *infra*, I.C. § 37–2732 treats manufacturing as a criminal act distinguishable from delivery or possession with intent to deliver. This is a constitutionally permissible legislative choice. As the United States Supreme Court once said, referring to federal liquor laws during the Prohibition era, "[t]here is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has the power to prohibit...." *Albrecht v. United States*, 273 U.S. 1, 11, 47 S.Ct. 250, 253, 71 L.Ed. 505 (1927).

Thus, there is little constitutional protection against prosecution and punishment for closely related, but separately discernible, crimes. What protection exists may be found in the double jeopardy provisions of the state and federal constitutions. Both provisions are interpreted in light of a test set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932): "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Blockburger* focuses upon the statutory elements of the offenses. If each offense requires proof of a fact that the other does not, there is no double jeopardy under *Blockburger*. *Matthews v. State*, 113 Idaho 83, 741 P.2d 370 (Ct.App.1987) (discussing *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975)).

In the present case, the *Blockburger* test has been satisfied. The facts establishing the statutory elements of manufacturing a controlled substance are different from the facts required to prove the elements of possessing a controlled substance with intent to deliver. Manufacturing is complet-

ed when a person produces or otherwise prepares the controlled substance. I.C. § 37–2701(m). On the other hand, possession with intent to deliver does not require any production, processing or synthesizing of a drug. It is complete upon actual or constructive possession coupled with the intent to transfer, or attempt to transfer, the substance to another person. I.C. § 37–2701(f). Each crime requires proof of an element not required by the other. Therefore, the separate convictions in this case do not violate constitutional protections against double jeopardy.

The application of I.C. § 18–301 is more problematic. The statute provides as follows:

> An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other.

Our Supreme Court has held that this language, focusing upon acts rather than elements, is broader than the scope of constitutional protection against double jeopardy. *See State v. Sterley*, 112 Idaho 1097, 739 P.2d 396 (1987). However, the Supreme Court also has held that a general transaction or series of events may be treated as several separate acts if the acts are distinguishable. *State v. McCormick*, 100 Idaho 111, 594 P.2d 149 (1979).

In this case, the state has urged that the acts be distinguished upon their differing locations. The state contends that the acts constituting manufacture of marijuana took place in the greenhouse, and that the acts constituting possession with intent to deliver took place in the living quarters of the defendants' home. Although this is true, we believe the spatial relationship among events is not dispositive under I.C. § 18–301. Rather, our Supreme

Court has adopted a "temporal test"—i.e., a test of time—in applying the statute. If the acts comprising one crime are completed before the commission of the second crime, then the two crimes cannot be said to arise from the same act or transaction. *State v. Sterley, supra.*

Under the judge's instruction to the jury, quoted at note 2, *infra*, the crime of manufacturing marijuana was completed when the defendants cultivated and harvested the marijuana plants.[3] But the defendants' conduct did not stop there. The evidence showed that the defendants retained large amounts of processed marijuana in their possession, accumulating it in packaged and unpackaged forms. Of course, there was no single point in time when all cultivation and harvesting stopped, and all stockpiling of processed marijuana began; these activities overlapped as unharvested plants continued to mature. Nevertheless, we think the acts were separate enough in character, and clear enough in sequence, to be temporally distinguishable. Therefore, although the question is a close one, we conclude that I.C. § 18–301 did not prohibit dual convictions for manufacturing and for possession with intent to deliver in this case.

### III

We next consider the trial court's instruction to the jury on the element of intent to deliver. The judge instructed as follows:

Evidence of the quantity of substances found will not, by itself, support an inference of intent to deliver. One or more of the following factors must be proven:

(1) Suspicious activities by a defendant, or the existence of money and transaction records, indicating delivery of controlled substances;

(2) The defendant's personal habits regarding use of the substances in question;

(3) The economic value of the substances, if sold;

(4) Expert testimony concerning typical patterns of use and sale;

(5) The existence of paraphernalia customarily used to process controlled substances for delivery; and

(6) The existence of packages or containers customarily used in delivery.

The evidence, taken as a whole, must establish a substantial, rather than speculative, basis to draw such an inference.

■ Randles and Ernst now argue that this instruction violated the due process clause of the Fourteenth Amendment by shifting to them the burden of proof regarding intent. The state responds—and the appellants appear to concede—that defense counsel failed to make this particular objection to the instruction at trial. Rather, he simply stated: "My objection would be basically it [the instruction] focuses on facts and unfairly selects facts." This objection lacks the specificity required in order to preserve an issue on appeal. However, in a criminal case, we may examine a question of fundamental error raised for the first time during the appeal.[4] An error is "fundamental" if it destroys the fairness

---

3. The statutory definition of "manufacturing" is broader than the definition contained in the jury instruction. The statutory language goes beyond production and propagation to include "preparation" and "any packaging or repackaging of the substance...." I.C. § 37–2701(m). However, no issue has been raised concerning the jury instruction. It was given without objection; in fact, the defendants had requested an instruction that similarly restricted "manufacturing" to the propagation of a controlled substance. Consequently, our analysis of the I.C. § 18–301 issue today is constrained by the limited definition of "manufacturing" upon which the parties agreed to try this case. We need not,

and do not, decide whether all acts potentially embraced by the entire statutory definition of "manufacturing" would be distinguishable from acts comprising possession with intent to deliver.

4. Our Supreme Court recently may have shed some doubt on the necessity of an objection, when it held in a civil case that an erroneous instruction could be challenged for the first time on appeal. *Country Insurance Co. v. Agricultural Development, Inc.,* 107 Idaho 961, 695 P.2d 346 (1984). The Court's analysis focused on the civil rule governing objections to jury

of a trial and thereby deprives the accused of due process. *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971).

■ When an instruction shifts to the defendant an essential element of the state's case, by mandating a presumption which the defendant must rebut, it violates due process and deprives the defendant of a fair trial. *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *State v. Williams*, 103 Idaho 635, 651 P.2d 569 (Ct.App.1982). However, in our view, the instruction here did not mandate a presumption. Rather, it identified the circumstantial factors necessary to support an "inference" of intent to deliver a controlled substance. The factors were those set forth by this Court in *State v. O'Campo*, 103 Idaho at 68, 644 P.2d at 991.[5] In their brief, Randles and Ernst contend that this instruction "tends to create a presumption ..." because it does not refer to a "permissive" inference. They argue that the instruction contains "no guidance to the jury as to whether or not they are free to disregard any inference they may draw from the facts."

It may well be that the two-word phrase "permissive inference" describes more clearly than the single word "inference" the jury's right to choose whether or not to derive a fact from other facts. However, the possibility that an instruction could be improved does not necessarily mean it is erroneous. The word "inference," by itself, connotes an evaluative process by which it is determined whether the existence of a fact is established by the existence of other facts. Moreover, the jury instructions in this case, taken as a whole, plainly informed the jurors that they were to be the judges of all facts, whether proven directly or circumstantially. We hold that the challenged instruction was not erroneous; *a fortiori*, we find no fundamental error.

## IV

■ The final issue is whether the trial court improperly admitted evidence concerning the future value of the twenty growing marijuana plants. The evidence was presented in the form of expert testimony by an officer of the Department of Law Enforcement. He gave an opinion on the value of the plants at maturity, although the plants were not fully grown when seized. The officer testified that each mature plant would be worth approximately $2,000, for a total value of $40,000. The defense objected to this testimony as irrelevant and speculative, but the objection was overruled. On appeal Randles and Ernst argue that the testimony was irrelevant because it did not tend to show that possession of the processed marijuana was coupled with an intent to deliver. We disagree.

A trial judge may admit evidence upon determining that it is relevant and that its probative value is not outweighed by any prejudicial impact. I.R.E. 401. Here we are concerned only with the threshold determination of relevancy. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact

---

instructions, I.R.C.P. 51(a)(1), which is substantially similar to the criminal rule, I.C.R. 30(a). However, the Court previously had held that objections under Rule 30(a) were necessary to preserve issues in criminal appeals. *State v. Carter*, 103 Idaho 917, 655 P.2d 434 (1982). Until the Supreme Court decides otherwise, we will follow *Carter* in criminal cases—requiring timely objections to preserve claims of error, but continuing to review any claim of "fundamental" error.

**5.** As a related issue, the appellants also maintain that the instruction misstates the rule set forth in *O'Campo* because it would allow a jury to

infer intent solely from evidence of a substantial quantity of drugs along with packaging materials. We disagree. *O'Campo* specifically allows an inference of intent to be based on quantity greater than necessary for personal use, together with drug packaging materials. Only where the quantity and economic value of the drug suggest personal use is other evidence needed to support an inference of intent to deliver. Here, the amount of marijuana was far greater than necessary for personal use, and packaging materials were found.

that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* Here, we acknowledge that the issue was the defendants' intent to deliver the processed marijuana, not to deliver the plants themselves. Nevertheless, the value of mature plants necessarily would reflect the potential revenue to be gained by selling the marijuana harvested and processed from such plants. Accordingly, we hold that the evidence was relevant to the issue of intent to deliver. The trial court did not err in admitting it.

The judgments of the district court are affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.